# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| NICHOLAS CRYSTAL, | Case No. 2:21-cv-01729-GMN-NJK |
| Petitioner, | |
| v. | ORDER |
| CALVIN JOHNSON, et al., | |
| Respondents. | |

Nicholas Crystal's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court for final adjudication on the merits. (ECF No. 1). Following a jury trial, Crystal was convicted of several offenses, including robbery with the use of a deadly weapon and attempt murder with the use of a deadly weapon. (ECF No. 8-8). In his habeas petition, Crystal alleges that his trial counsel provided ineffective assistance of counsel by failing to adequately investigate his mental health and substance abuse issues. (ECF No. 1 at 9). As discussed below, the court denies Crystal's habeas petition, denies him a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

## I.    BACKGROUND[1]

On August 5, 2014, Crystal's girlfriend, Nina Spiro, approached Aner Ayala as he was pumping gas at a gas station. (ECF No. 7-23 at 28-29, 125). Spiro asked for a ride, claiming that she was pregnant and experiencing "labor pains." (*Id.* at 29). Ayala declined, and Spiro walked away. (*Id* at 29-30). Crystal then approached Ayala. (*Id.* at 30). Crystal claimed to be Spiro's brother, and he "plead[ed]" for Ayala to help her. (*Id.*) Ayala ultimately agreed to give Spiro a ride to the hospital. (*Id.* at 31-32). The three then got into Ayala's car; Ayala sat in the driver's seat, Spiro sat in the front passenger seat, and Crystal sat behind Ayala. (*Id.* at 31).

---

[1] The court makes no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify the court overlooked it in considering Crystal's claims.

1

Shortly after the car left the gas station, Spiro said that she was feeling better and wanted to go to a Motel 6. (*Id.* at 32). Ayala declined this request, explaining that the Motel 6 was "too far" away. (*Id.* at 44). Spiro then asked Ayala to take her to her aunt's house. (*Id.*) Crystal and Spiro ultimately led Ayala to a secluded area. (*Id.* at 48-49). Shortly after Ayala parked the car, Crystal struck him on the head "multiple" times. (*Id.* at 52-54). Ayala escaped from the car, and Crystal and Spiro drove away. (*Id.* at 55). Soon thereafter, Boulder City police officers spotted Ayala's car heading south on US 93 at approximately 100 miles per hour. (ECF No. 7-25 at 4-5). Officers began chasing the car but ultimately called off the pursuit. (*Id.* at 5-6). Later that night, officers found Ayala's car abandoned on the side of the road in Arizona. (ECF No. 7-23 at 92-93). The car was "on fire." (ECF No. 7-26 at 133).

Four days later, on the evening of August 9, 2014, David Quintana was driving home to his apartment. (ECF No. 7-23 at 140-41). Quintana entered the apartment complex and noticed a man—later discovered to be Crystal—riding around the parking lot on a bicycle. (*Id.* at 142-44, 147). Quintana parked and exited his car. (*Id.* at 149). Crystal then approached Quintana, telling him that he "need[ed] a ride to the hospital, because . . . his girlfriend [was] pregnant and [was] about to give birth." (*Id.* at 149-50). Quintana said he could not give Crystal a ride. (*Id.* at 150). Quintana did agree, however, to let Crystal borrow his cellphone to make a call. (*Id.* at 150-51). Crystal made a call, then said he needed to make another one. (*Id.* at 151, 153). Crystal handed the phone to Quintana and asked him to dial the number. (*Id.* at 153). Quintana said he would not do that, whereupon Crystal approached Quintana and, "out of nowhere," began striking him on the head with a rock. (*Id.* at 154-55).

Crystal continued to hit Quintana, who eventually "dropped to all fours" and said, "I'm done, take what you want, I'm done." (*Id.* at 159). Crystal responded, "I'm going to fucking kill you," and began using the rock to strike Quintana's face "faster" than before. (*Id.* at 159-61). Crystal stopped attacking Quintana when a car pulled into the parking lot. (ECF No. 7-25 at 33). Crystal then fled the scene in Quintana's car. (*Id.* at 33-34).

A jury found Crystal guilty of (i) conspiracy to commit robbery, (ii) conspiracy to commit kidnapping, (iii) first-degree kidnapping resulting in substantial bodily harm, (iv) two counts of

2

battery with the use of a deadly weapon resulting in substantial bodily harm, (v) two counts of battery with intent to commit a crime, (vi) two counts of burglary while in possession of a deadly weapon, (vii) two counts of robbery with the use of a deadly weapon, (viii) two counts of grand larceny of a motor vehicle, and (ix) attempt murder with the use of a deadly weapon. (ECF No. 8-8). Crystal was sentenced to an aggregate term of life in prison with minimum parole eligibility after 300 months. (*Id.* at 4).

Crystal appealed his conviction, and the Nevada Court of Appeals affirmed. (ECF No. 7-32; ECF No. 8-9). Crystal then sought habeas relief in Nevada state court. (ECF No. 8-11). The state district court held an evidentiary hearing and subsequently denied Crystal's petition. (ECF No. 8-21; ECF No. 8-29). The Nevada Court of Appeals affirmed the denial of the petition. (ECF No. 8-43).

## II.     GOVERNING STANDARDS OF REVIEW

### A.     Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1) "if the state court identifies the correct

1  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that
2  principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The
3  'unreasonable application' clause requires the state court decision to be more than incorrect or
4  erroneous. The state court's application of clearly established law must be objectively
5  unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

6  The Supreme Court has instructed that a "state court's determination that a claim lacks
7  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
8  correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting
9  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case
10 for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing
11 *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal
12 quotation marks and citations omitted) (describing the standard as "difficult to meet" and a "highly
13 deferential standard for evaluating state-court rulings, which demands that state-court decisions be
14 given the benefit of the doubt").

15  **B.      Standard for Evaluation of an Ineffective Assistance of Counsel Claim**

16  In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective
17 assistance of counsel claims requiring a petitioner to demonstrate that: (i) the counsel's
18 "representation fell below an objective standard of reasonableness[;]" and (ii) the counsel's
19 deficient performance prejudices the petitioner such that "there is a reasonable probability that,
20 but for counsel's unprofessional errors, the result of the proceeding would have been different."
21 *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective
22 assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within
23 the wide range of reasonable professional assistance." *Id*. at 689. It is the petitioner's burden to
24 show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed
25 . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it
26 is not enough for the petitioner to "show that the errors had some conceivable effect on the outcome
27 of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [the petitioner] of
28 a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). The Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III. DISCUSSION

In his sole ground for relief, Crystal alleges that his trial counsel provided ineffective assistance of counsel by failing to adequately investigate his mental health and substance abuse issues. (ECF No. 1 at 9). Crystal contends that, had counsel presented evidence on such issues at trial, the jury likely "would not have found [him] to have the [ ] specific intent required for" the attempt murder count. (*Id.*)

#### A. Background Information

Crystal's trial counsel testified at the post-conviction evidentiary hearing. (ECF No. 8-21). Counsel explained that he had "multiple" in-person conversations with Crystal leading up to the trial. (*Id.* at 16). Although counsel was "looking out for" signs of mental illness, he "never noticed" any such signs during his meetings with Crystal. (*Id.* at 17-18). Counsel also had "numerous" in-person conversations with Crystal's parents leading up to the trial. (*Id.* at 18). Crystal's mother "expressed concern regarding a disease that her son was suffering from, but it was not of a psychological nature." (*Id.*) Indeed, at no point did Crystal's parents tell counsel that Crystal "suffer[ed] from any sort of mental illness." (*Id.*)

Counsel noted that he had used "psychiatric diagnosis to attack a mens rea related to a [ ] crime" "[d]ozens of times" in his "twenty[-]plus years of defending defendants." (*Id.* at 27-28). Counsel further explained that he would have attempted to obtain "psychological records" had he believed there was "a potential mental health issue that could have assisted in [Crystal's] defense." (*Id.* at 17). Counsel did not pursue such a defense in Crystal's case because, according to him, he

had "nothing to work with." (*Id.* at 28).

B.  **State Court Determination**

In affirming the denial of Crystal's state habeas petition, the Nevada Court of Appeals held:

> First, Crystal argued trial counsel was ineffective for failing to investigate Crystal's mental health and substance abuse as it relates to the mens rea necessary for attempted murder. At the evidentiary hearing on Crystal's petition, trial counsel testified that Crystal did not mention any substance abuse or mental health issues, nor was he provided with Crystal's medical records prior to trial. Additionally, trial counsel testified Crystal did not give him reason to suspect Crystal's mental health. Trial counsel also testified that he spoke to Crystal's parents during trial preparation, and they did not voice any concerns about Crystal's mental health.
>
> The district court found trial counsel's testimony was credible, and Crystal has not demonstrated the district court reached the wrong conclusion. *See Howard v. States*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 1072, 13 P.3d 420, 432 (2000). In light of the evidence and testimony presented at the evidentiary hearing, Crystal failed to demonstrate that counsel had reason to believe Crystal lacked the requisite mens rea to commit the crime. Therefore, Crystal failed to demonstrate his counsel's failure to investigate fell below an objective standard of reasonableness. Accordingly, we conclude the district court did not err by denying this claim.

(ECF No. 8-43 at 2).

C.  **Conclusion**

The Nevada Court of Appeals' ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In an ineffective assistance of counsel case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Id.* at 688. This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

The Nevada Court of Appeals reasonably concluded that Crystal failed to show that trial

counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. "There is no clear Supreme Court case law always requiring a mental health investigation" prior to a criminal trial. *Gonzalez v. Wong*, 667 F.3d 965, 991 (9th Cir. 2011). To the contrary, *Strickland* recognizes that "counsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." 466 U.S. at 691 (emphasis added). Thus, "[a]bsent any objective indication that [a defendant] suffered from any mental illness, [trial counsel] cannot be deemed ineffective for failing to pursue this avenue . . . where [the defendant's] mental illness seemed unlikely." *Gonzalez v. Knowles*, 515 F.3d 1006, 1015 (9th Cir. 2008); *see also Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence.").

Here, as the Nevada Court of Appeals explained, Crystal's trial counsel testified that neither Crystal nor his parents gave any indication that Crystal suffered from mental illness. The state district court found this testimony to be credible, and the Nevada Court of Appeals held that Crystal had failed to meet his burden of showing that conclusion to be wrong. Thus, this court will not supplant this credibility determination. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). Likewise, there is no evidence in the state-court record that Crystal or his parents informed counsel that Crystal experienced substance abuse issues. Faced with this record, the Nevada Court of Appeals concluded that (i) counsel had no "reason to believe Crystal lacked the requisite mens rea to commit the crime" of attempt murder, and (ii) counsel thus did not provide constitutionally deficient representation by failing to investigate Crystal's mental health or substance abuse issues. (ECF No. 8-43 at 2). This ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 786-87.

Crystal argues that counsel was ineffective because the presentence investigation report ("PSI") revealed that (i) he had been "diagnosed as schizophrenic and bipolar and was not on

medication at the time of the offense," and (ii) he was "addicted to spice, ingesting the substance daily." (ECF No. 1 at 10). At the post-conviction evidentiary hearing, however, counsel testified that Crystal "never told [him]" about any mental health issues before he received the PSI. (ECF No. 8-21 at 30-31). Nothing in the record contradicts this assertion, and Crystal points to no evidence that counsel had notice *before trial* that he suffered from mental illness or substance abuse issues. As noted above, *Strickland* requires courts to evaluate the challenged conduct "from counsel's perspective at the time." 466 U.S. at 689. Moreover, the PSI itself indicated that "other than [Crystal's] own self-reporting," his statements were "unverified." (ECF No. 8-21 at 31). Crystal thus fails to demonstrate that the Nevada Court of Appeals' rejection of his ineffective assistance claim constituted an objectively unreasonable application of federal law or was based on an unreasonable determination of the facts. Accordingly, he is not entitled to federal habeas relief on the sole ground raised in his petition.[2]

### IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Crystal. Rule 11 of the Rules Governing Section 2254 Cases requires the court to issue or deny a certificate of appealability ("COA"). Therefore, the court has *sua sponte* evaluated the claim within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (i) whether the petition states a valid claim of the denial of a

---

[2] Before trial counsel was retained, the public defenders representing Crystal requested that he be evaluated for competency to stand trial. (ECF No. 8-21 at 12-14). An evaluation was conducted, and Crystal was "deemed competent" to proceed. (*Id.* at 29-30). Crystal does not cite these developments in his federal habeas petition, but even if the court considered them, they do not show trial counsel was on notice that Crystal potentially suffered from mental illness. Notably, trial counsel testified at the post-conviction evidentiary hearing that, "through the . . . conversations that he and [Crystal] had had and through the course of the trial," he "saw no reason to question [Crystal's] competency." (*Id.* at 14).

constitutional right and (ii) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this court finds that a COA is unwarranted.

## V. CONCLUSION[3]

In accordance with the foregoing, **IT IS THEREFORE ORDERED:**

1. The petition (ECF No. 1) is DENIED.

2. A certificate of appealability is DENIED.

3. The clerk of the court shall enter judgment accordingly and close this case.

DATED: July 24, 2022

GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

---

[3] Crystal requests that this court conduct an evidentiary hearing. (ECF No. 1 at 11). Neither further factual development nor any evidence that might be offered at an evidentiary hearing would entitle Crystal to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Thus, Crystal's request is denied.